1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON, | Case No. 20-CV-02200-LHK |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| 12 N PARK VICTORIA LLC, and JALAL KHALILZADEH, | |
| Defendants. | |

Plaintiff Scott Johnson filed this action for violation of the Americans with Disabilities Act ("ADA") and California Unruh Civil Rights Act ("UCRA").  ECF No. 1 ("Compl.").  Before the Court is Plaintiff Scott Johnson's ("Plaintiff") motion for default judgment against Defendants 12 N Park Victoria LLC and Jalal Khalilzadeh ("Khalilzadeh") (collectively, "Defendants").  ECF No. 17.[1]  Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Plaintiff's motion for default judgment.

I.      **BACKGROUND**

   A.  **Factual Background**

---

[1] Plaintiff's motion for default judgment contains a notice of motion that is contained in a separate document from the points and authorities in support of the motion.  ECF No. 17, at 1.  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

1

United States District Court
Northern District of California

United States District Court
Northern District of California

1      Plaintiff, a resident of California, is a level C-5 quadriplegic.  Compl. at ¶ 1.  Plaintiff uses

2 a wheelchair for mobility because he cannot walk and drives a specially equipped van for

3 transportation.  *Id.*

4      Plaintiff alleges that in June of 2019, October of 2019, and January of 2020, he visited the

5 Shell Gas Station owned by Defendants in Milpitas, California ("Shell Gas Station").  *Id.* at ¶¶ 10,

6 3–5.  Plaintiff alleges that the Shell Gas Station is "a facility open to the public, a place of public

7 accommodation, and a business establishment."  *Id.* at ¶ 11.  Plaintiff alleges that Defendant 12 N

8 Park Victoria LLC owns the real property at the location of the Shell Gas Station, and that

9 Defendant Khalilzadeh owns the Shell Gas Station.  *Id.* at ¶ 3, 5.

10      Plaintiff alleges that on each of the dates that Plaintiff visited the Shell Gas Station,

11 Defendants (1) "failed to provide wheelchair accessible parking in conformance with the ADA

12 Standards"; (2) "failed to provide wheelchair accessible sales counters in conformance with the

13 ADA Standards"; and (3) "failed to provide wheelchair accessible paths of travel inside the Gas

14 Station store in conformance with the ADA Standards."  *Id.* at ¶ 12, 14, 16.  Plaintiff alleges that

15 he personally encountered these barriers, and that "[b]y failing to provide accessible facilities, the

16 defendants denied the plaintiff full and equal access."  *Id.* at ¶ 19.

17      Plaintiff further states that an investigator working for Plaintiff's counsel was sent to

18 investigate Plaintiff's claim that the Shell Gas Station lacked wheelchair accessible parking

19 spaces, a wheelchair accessible sales counter, and wheelchair accessible paths of travel inside the

20 Shell Gas Station.  Mot. at 2.  The investigator visited the Shell Gas Station on March 9, 2020 and

21 confirmed that "defendants failed to provide wheelchair accessible parking spaces, wheelchair

22 accessible sales counter and wheelchair accessible paths of travel inside the Gas Station store."  *Id.*

23 **B.  Procedural History**

24      On April 1, 2020, Plaintiff filed the instant case against Defendants.  Compl. at 1.  Plaintiff

25 brings two claims against Defendants: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq*.; and

26 (2) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.  Id.* at ¶¶ 25–

27 40.

28

1    On May 27, 2020, Plaintiff filed a Summons Returned for 12 N Park Victoria LLC.  ECF

2  No. 10.  On June 2, 2020, Plaintiff filed a Summons Returned for Khalilzadeh.  ECF No. 11.

3  Neither Defendant has appeared in this case.

4    On June 16, 2020, Plaintiff filed a motion for entry of default as to 12 N Park Victoria

5  LLC.  ECF No. 12.  On June 17, 2020, the Clerk of Court entered default against 12 N Park

6  Victoria LLC.  ECF No. 13.

7    On June 29, 2020, Plaintiff filed a motion for entry of default as to Khalilzadeh.  ECF No.

8  14.  On June 30, 2020, the Clerk of Court entered default against Khalilzadeh.  ECF No. 15.

9    On February 18, 2021, Plaintiff filed the instant motion for default judgment against both

10  Defendants.  ECF No. 17 ("Mot.").

11  **II.    LEGAL STANDARD**

12    Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default

13  judgment when the Clerk, under Rule 55(a), has previously entered a party's default.  Fed. R. Civ.

14  P. 55(b).  "The district court's decision whether to enter a default judgment is a discretionary one."

15  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk enters default, all well-

16  pleaded allegations regarding liability are taken as true, except with respect to damages.  *See Fair*

17  *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination

18  of liability and the default judgment itself, the general rule is that well-pled allegations in the

19  complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–

20  18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating

21  to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219

22  F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the

23  truth of Plaintiff's averments.").  "In applying this discretionary standard, default judgments are

24  more often granted than denied."  *Philip Morris*, 219 F.R.D. at 498.

25    "Factors which may be considered by courts in exercising discretion as to the entry of a

26  default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

27  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

28

3

United States District Court
Northern District of California

the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.   DISCUSSION

### A.   Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must first determine whether jurisdiction over the instant case exists.

The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction. Finally, for the Court to exercise personal jurisdiction over a defendant, the defendant must also have been served in accordance with Federal Rule of Civil Procedure 4. Accordingly, the Court then turns to service of process.

### 1.   Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law. Specifically, Plaintiff brings a claim for violation of the ADA, 42 U.S.C. § 12101, *et seq.* Compl. at ¶¶ 25–35. The Court has subject matter jurisdiction over Plaintiff's ADA claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Plaintiff also brings a related state law claim for violation of the California Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.* Compl. at ¶¶ 36–40. Because Plaintiff's state law claim stems from the same underlying event as Plaintiff's federal claim—Defendants' ownership of a Shell Gas Station that allegedly does not permit access by people with disabilities—the Court has supplemental jurisdiction over Plaintiff's state law claim. *See* 28

4

1   U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the

2   district courts shall have supplemental jurisdiction over all other claims that are so related to

3   claims in the action within such original jurisdiction that they form part of the same case or

4   controversy under Article III of the United States Constitution."); *DaimlerChrysler Corp. v. Cuno*,

5   547 U.S. 332, 351 (2006) ("[F]ederal-question jurisdiction over a claim may authorize a federal

6   court to exercise jurisdiction over state-law claims that may be viewed as part of the same case

7   because they 'derive from a common nucleus of operative fact' as the federal claim.") (quoting

8   *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *DiscoverOrg Data, LLC v. Bitnine Global,*

9   *Inc*, 2020 WL 6562333, at *3 (N.D. Cal. Nov. 9, 2020) (concluding that the Court had subject

10  matter jurisdiction where Plaintiff asserted federal claims and state law claims that stemmed from

11  the same underlying event as the federal claims).  Accordingly, the Court has subject matter

12  jurisdiction over both of Plaintiff's claims.  The Court next considers whether it has personal

13  jurisdiction over Defendants.

14      **2.  Personal Jurisdiction**

15      "The party seeking to invoke the court's jurisdiction bears the burden of establishing that

16  jurisdiction exists."  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v.*

17  *Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  Personal jurisdiction over an out-of-

18  state defendant is appropriate if the relevant state's long-arm statute permits the assertion of

19  jurisdiction without violating federal due process.  *Schwarzenegger v. Fred Martin Motor Co.*, 374

20  F.3d 797, 800–01 (9th Cir. 2004).  California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is

21  co-extensive with federal due process requirements, and therefore the jurisdictional analyses under

22  California law and federal due process merge into one.  *See* Cal. Civ. Proc. Code § 410.10 ("[A]

23  court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of

24  this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223

25  (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process

26  requirements, so the jurisdictional analyses under state law and federal due process are the

27  same.").

28

United States District Court
Northern District of California

1      For a court to exercise personal jurisdiction over a defendant consistent with due process,

2  that defendant must have "certain minimum contacts" with the relevant forum state "such that the

3  maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

4  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

5  463 (1940)).  In addition, "the defendant's 'conduct and connection with the forum State' must be

6  such that the defendant 'should reasonably anticipate being haled into court there.'"  *Sher v.*

7  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v.*

8  *Woodson*, 444 U.S. 286, 297 (1980)).

9      A court may exercise either general or specific jurisdiction over a defendant.  *See Ziegler*

10  *v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).  In the instant case, the Court concludes that

11  the exercise of general jurisdiction over Defendants is appropriate.

12      General jurisdiction exists when a defendant is physically present in the forum state or

13  when a defendant's activities in the forum state are "continuous and systematic" such that a

14  defendant's contacts approximate physical presence in the forum state.  *See Schwarzenegger*, 374

15  F.3d at 801 (citation omitted).

16      Here, Plaintiff alleges that Defendants are owners of the real property and non-ADA-

17  compliant Shell Gas Station at issue in the instant case, which is located in Milpitas, California.

18  Compl. at ¶ 3–5.  On this basis, the Court finds that Defendants have "substantial" and

19  "continuous and systematic" contacts with the forum state that support the Court's exercise of

20  general personal jurisdiction.  *See Schwarzenegger*, 374 F.3d at 801 (general jurisdiction exists

21  where a defendant has "continuous and systematic general business contacts . . . that approximate

22  physical presence in the forum state" (citations omitted)); *see also Golden West Veg, Inc. v.*

23  *Bartley*, 2017 WL 2335602, at *4 (N.D. Cal. May 30, 2017) (finding that plaintiff established

24  personal jurisdiction for purposes of default judgment by alleging that defendant operated a sole

25  proprietorship continuously in the state of California); *Macias v. Fasail*, 2021 WL 2719297, at *5

26  (N.D. Cal. July 1, 2021) (same).  Moreover, Plaintiff has provided evidence that Khalilzadeh is a

27  resident of Milpitas, California and that 12 N Park Victoria LLC is domiciled in California.  ECF

28  

6

1    No. 17-7, at 3-6.

2         Accordingly, the Court finds that it has general personal jurisdiction over Defendants.

3    **3.  Service of Process**

4         Finally, for the Court to properly exercise personal jurisdiction over Defendants,

5    Defendants must have been served in accordance with Federal Rule of Civil Procedure 4.  *See*

6    *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in

7    accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal

8    jurisdiction." (footnote omitted)); *see also Pension Tr. Fund for Operating Eng'rs v. Kickin*

9    *Enters.*, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20, 2012) ("[W]here entry of default judgment

10   is requested, the Court must determine whether service of process was adequate.").

11        Service of a complaint in federal court is governed by Federal Rule of Civil Procedure 4

12   ("Rule 4").  Rule 4(e)(1) allows for service "following state law for serving a summons in an

13   action brought in courts of general jurisdiction in the state where the district court is located or

14   where service is made."  Fed. R. Civ. P. 4(e)(1).

15        Plaintiff argues that service was effectuated on both Defendants via personal service.  Mot.

16   at 5.  However, Plaintiff's own proof of service filings indicate that service was made via

17   substitute service, not personal service.  *See* ECF Nos. 10, 11 (stating that service was made via

18   substitute service).  Because the requirements for service of process via substitute service are

19   different for individual defendants and entity defendants, the Court addresses the sufficiency of

20   service on the defendants separately.

21        **a.  Defendant 12 N Park Victoria LLC**

22        Plaintiff's proof of service states that 12 N Park Victoria LLC was served pursuant to

23   California Code of Civil Procedure Section 415.20.  ECF No. 10.  Section 415.20(a) requires (1)

24   that a copy of the summons and complaint be left during usual office hours at the company's

25   office; (2) that the summons and complaint be left "with the person who is apparently in charge

26   thereof"; and (3) that after the summons and complaint are left, a copy of the summons and

27   complaint be mailed with prepaid postage "to the person to be served at the place where a copy of

28

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(a).  Plaintiff's proof of service demonstrate that Plaintiff has met these requirements.  *See* ECF No. 10.

However, to effectuate substitute service on an entity defendant under California law, Plaintiff is also required to satisfy California Code of Civil Procedure Sections 417.10(a) and 412.30.  In the instant case, Plaintiff has failed to satisfy these additional requirements.  First, Plaintiff has not provided an "affidavit of the person making the service" as required under California Code of Civil Procedure Section 417.10(a).  Second, Plaintiff has failed to provide an affidavit stating that the summons included a notice as required by California Code of Civil Procedure Section 412.30.  The Court addresses each requirement below.

First, under California Code of Civil Procedure Section 417.10(a), when a corporation is served under Section 415.20, "[p]roof that a summons was served . . . shall be made . . . by the affidavit of the person making the service showing the time, place, and manner of service and facts showing that the service was made in accordance with this chapter."  Cal. Civ. Proc. Code § 417.10; *see also Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc.*, 2020 WL 4207445, at *5 (N.D. Cal. July 22, 2020) (explaining requirements of Section 417.10(a)).  Plaintiff has failed to provide an affidavit from the person making the service in the instant case.

Second, this affidavit must show that "the notice required by Section 412.30 appeared on the copy of the summons served, if in fact it did appear."  Cal. Civ. Proc. Code § 417.10. California Code of Civil Procedure Section 412.30 requires that a copy of the summons to be served contains a notice "stating in substance: 'To the person served: You are hereby served in the within action (or special proceeding) on behalf of [the corporation being served] as a person upon whom a copy of the summons and of the complaint may be delivered to effect service on said party under the provisions of [Sections 415.20(a) and 417.10(a)].'"  Cal. Civ. Proc. Code § 412.30. "If such notice does not appear on the copy of the summons served, no default may be taken against such corporation or unincorporated association or against such person individually, as the case may be."  *Id.*

Plaintiff has failed to provide an affidavit from the process server stating that the copy of

United States District Court
Northern District of California

1  the summons served on 12 N Park Victoria LLC included the notice required under Section

2  412.30.  As a result, "no default may be taken" against 12 N Park Victoria LLC.  Cal. Civ. Proc.

3  Code § 412.30; *see also Michael Grecco Prods.*, 2020 WL 4207445, at *5-6 (explaining that

4  default may not be entered if these requirements are not met).

5      Accordingly, the Court finds that Plaintiff has not demonstrated that service was proper as

6  to 12 N Park Victoria LLC.  Because "[f]ailed service cannot support the entry of a default

7  judgment," the Court DENIES Plaintiff's motion for default judgment without prejudice as to 12

8  N Park Victoria LLC.  *Heifetz v. Breed Properties*, 2017 WL 713303, at *3 (N.D. Cal. Feb. 23,

9  2017) (citing *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992)).

10      Because Plaintiff could demonstrate that service of process on 12 N Park Victoria LLC

11  was proper by filing the requisite affidavit from the process server, the Court affords Plaintiff an

12  additional opportunity to demonstrate that service of process was proper.  Within 7 days of this

13  Order, Plaintiff shall file proof that the purported May 25, 2020 service complied with the

14  requirements of California Code of Civil Procedure Sections 415.20(a), 417.10(a), and 412.30.  If

15  service of process on 12 N Park Victoria LLC was proper, Plaintiff shall file a renewed motion for

16  default judgment by September 1, 2021.  If, however, service of process on 12 N Park Victoria

17  LLC was not proper, then the Court will order the Clerk of the Court to vacate the entry of default

18  against 12 N Park Victoria LLC.  Plaintiff must then properly serve 12 N Park Victoria LLC.

19      **b.  Defendant Khalilzadeh**

20      An individual defendant may be served under California law through substituted service by

21  "leaving a copy of the summons and complaint during usual office hours in [the defendant's]

22  office . . . with the person who is apparently in charge thereof . . . and by thereafter mailing a copy

23  of the summons and complaint . . . where a copy of the summons and complaint were left."  Cal.

24  Code Civ. Proc. § 415.20(a).

25      Unlike an entity defendant, substitute service under California law may be made on an

26  individual only after attempting to personally serve the defendant with "reasonable diligence."

27  Cal. Civ. Proc. Code § 415.20(b).  Generally, "two or three attempts at personal service at a proper

28

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1   place should fully satisfy the requirement of reasonable diligence and allow substituted service to

2   be made*." Produce v. Cal. Harvest Healthy Foods Ranch Market*, 2012 WL 259575, at *5 (N.D.

3   Cal. Jan. 27, 2012) (internal quotation marks and citation omitted).  After personal service has

4   been attempted with reasonable diligence, a copy of the summons and complaint may be left at the

5   defendant's usual place of business with a "person apparently in charge" thereof, who is "at least

6   18 years of age, [and] who shall be informed of the contents" of the summons.  Cal. Civ. Proc.

7   Code § 415.20(b).  Furthermore, a plaintiff must then mail a copy of the documents to the

8   individual defendant at the address where service was effectuated.  *Id.*

9        Here, the process server left the summons and other documents with Valvir Singh, an

10   employee over the age of 18, after failing to personally serve Khalilzadeh three times at the Shell

11   Gas Station.  *See* ECF No. 11, at 3.  The process server informed Singh of the general nature of

12   the documents.  *Id.* at 1.  The process server then mailed the documents to the Shell Gas Station

13   address with postage prepaid.  *Id.* at 4.  Based on these facts and the information provided by

14   Plaintiff, the Court is satisfied that Khalilzadeh was properly served pursuant to Federal Rule of

15   Civil Procedure 4(e)(1) and California Code of Civil Procedure § 415.20(b).  Therefore, the Court

16   properly exercises personal jurisdiction over Khalilzadeh.

17   **B.  Whether Default Judgment is Proper**

18        Having determined that the Court's exercise of subject matter jurisdiction and personal

19   jurisdiction over Khalilzadeh is proper, the Court now turns to the *Eitel* factors to determine

20   whether entry of default judgment against Khalilzadeh is warranted.

21   **1.  First *Eitel* Factor: Possibility of Prejudice**

22        Under the first *Eitel* factor, the Court considers the possibility of prejudice to Plaintiff if

23   default judgment is not entered against Defendant Khalilzadeh.  "A plaintiff who is denied a

24   default judgment and is subsequently left without any other recourse for recovery has a basis for

25   establishing prejudice." *Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc*, 2020 WL

26   7227199, at *6 (N.D. Cal. Dec. 8, 2020) (quoting *DiscoverOrg*, 2020 WL 6562333, at *5).  Here,

27   Plaintiff has established that Plaintiff will be prejudiced because Khalilzadeh has not participated

28

1
2
3

in this litigation and that Plaintiff would be without recourse to recover for the damages caused by Khalilzadeh if default judgment is not granted.  Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

4

### 2. Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

5
6
7
8
9
10
11
12
13

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in Plaintiff's complaint.  Courts often analyze these two factors together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").  In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pled allegations regarding liability in the complaint.  *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the complaint together.

14
15
16
17

In the instant case, Plaintiff brings two claims against Khalilzadeh: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq.*; and (2) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.*  Compl. at ¶¶ 25–40.  The Court first addresses Plaintiff's ADA claim and then addresses Plaintiff's UCRA claim.

18
19
20
21
22
23
24
25
26
27

Title III of the ADA prohibits discrimination on the basis of disability within places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  In order to state a claim under Title III of the ADA, Plaintiff must allege that: (1) he is disabled within the meaning of the ADA; (2) Defendant owns, leases, or operates a place of public accommodation; and (3) Plaintiff was denied public accommodations by Defendant because of Plaintiff's disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  Additionally, "[t]o succeed on an ADA claim

United States District Court
Northern District of California

28

11

1   based on architectural barriers, [Plaintiff] must also prove that: (1) the existing facility presents an

2   architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily

3   achievable." *Johnson v. Shahkarami*, 2021 WL 1530940, at *4 (N.D. Cal. Apr. 19, 2021) (internal

4   citation and quotation marks omitted).

5       In the instant case, Plaintiff alleges the necessary facts to establish his claim under the

6   ADA.  First, Plaintiff alleges that he is disabled within the meaning of the ADA.  Specifically,

7   Plaintiff alleges that he is a level C-5 quadriplegic.  Compl. at ¶ 1.  Plaintiff further alleges that he

8   uses a wheelchair for mobility because he cannot walk and that he uses a specially equipped van

9   for transportation.  *Id.*

10      Second, Plaintiff alleges that Khalilzadeh is the owner of the Shell Gas Station, and that

11  the Shell Gas Station is "a facility open to the public, a place of public accommodation, and a

12  business establishment."  *Id.* at ¶ 11.

13      Third, Plaintiff alleges that the Shall Gas Station presents several architectural barriers

14  prohibited under the ADA.  Plaintiff alleges that the Shell Gas Station: (1) "failed to provide

15  wheelchair accessible parking in conformance with the ADA Standards"; (2) "failed to provide

16  wheelchair accessible sales counters in conformance with the ADA Standards"; and (3) "failed to

17  provide wheelchair accessible paths of travel inside the Gas Station store in conformance with the

18  ADA Standards."  *Id.* at ¶ 12, 14, 16.

19      Specifically, Plaintiff alleges that the following barriers exist at the Shell Gas Station: (1)

20  parking stalls and access aisles in the Shell Gas Station parking lot that are not level with each

21  other in violation of ADA 2010 Standard § 502.4; (2) access isles next to the wheelchair

22  accessible parking spaces that are not marked so as to discourage parking in them in violation of

23  ADA 2010 Standard § 502.3.3; (3) a sales counter that is not 36 inches or lower in height and

24  greater than 36 inches in width in violation of ADA 2010 Standards § 904.4 and 904.4.1; and (4)

25  paths of travel inside the Shell Gas Station that are less than 36 inches in width in violation of

26  ADA 2010 Standard § 403.5.1.  Mot. at 9.  Plaintiff alleges that he personally encountered these

27  barriers, and that "[b]y failing to provide accessible facilities, the defendants denied the plaintiff

28

1   full and equal access." Compl. at ¶ 19.  Finally, Plaintiff argues that removal of these barriers is

2   "readily achievable."  Mot. at 10.  Accordingly, the Court concludes that Plaintiff has adequately

3   stated an ADA claim.

4           As to Plaintiff's UCRA claim, the UCRA provides that a violation of the ADA is a

5   violation of the UCRA.  *See* Cal. Civ. Code, § 51(f).  In the instant case, Plaintiff's UCRA claim

6   "arises from the same nucleus of operative facts as the ADA claim." *Johnson v. Medvill 1, LLC*,

7   2020 WL 7696056, at *7 (N.D. Cal. Dec. 28, 2020).  Because the Court concludes that Plaintiff

8   has adequately stated an ADA claim, the Court also concludes that Plaintiff has adequately stated

9   a UCRA claim.

10          Because the Court concludes that Plaintiff has adequately stated an ADA claim and a

11  UCRA claim, the second and third *Eitel* factors weigh in favor of granting default judgment as to

12  both of Plaintiff's claims.

13          **3.  Fourth *Eitel* Factor: The Amount of Money at Stake**

14          Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

15  relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp.

16  2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72.  "The Court considers

17  Plaintiff's declarations, calculations, and other documentation of damages in determining if the

18  amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at

19  *12 (N.D. Cal. May 29, 2007).

20          Default judgment is disfavored when a large amount of money is involved or is

21  unreasonable in light of the potential loss caused by the defendant's actions. *Id.*  However, courts

22  have found that this factor "presents no barrier to default judgment" as long as the potential

23  damages were "proportional to the harm alleged." *See Liu Hongwei v. Velocity V Ltd.*, 2018 WL

24  3414053, at *8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified);

25  *United States v. Roof Guard Roofing Co.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017)

26  (holding that a request for over $1,000,000 was reasonable because the tax debt was substantiated

27  with proof provided by the government).

28

United States District Court
Northern District of California

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Here, Plaintiff seeks to recover $12,000 in statutory damages and $4,640.00 in attorneys' fees and costs.  For the reasons explained below, *infra* Section III(C)(1), the Court concludes that an award of $12,000 in statutory damages and $3,640.00 in attorneys' fees and costs is reasonable and proportional to the ADA and UCRA violations alleged herein.  The Court notes that, under the UCRA, Plaintiff is entitled to statutory damages of $4,000 for each time he was discriminated against.  Cal. Civ. Code § 52(a).  Plaintiff alleges that he went to the Shell Gas Station and experienced its architectural barriers on three occasions, which entitles Plaintiff to $12,000 in statutory damages.  Compl. at ¶ 13.  Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case.  Where a defendant fails to appear in an action, a court can infer "the absence of the possibility of a dispute concerning material facts."  *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014).  Khalilzadeh has failed to make an appearance in this case.  The Court therefore takes the allegations in the complaint as true and holds that there is no dispute over material facts.  *Fair Hous. of Marin*, 285 F.3d at 906 ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  Furthermore, the evidence provided by Plaintiff establishes that the Shell Gas Station has structural barriers that prevent equal access by people with disabilities.  Compl. ¶¶ 9–10 (Plaintiff's allegations based on approximately three visits to the Shell Gas Station in one year and the findings of Plaintiff's counsel's investigator).

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect.  After Plaintiff made three efforts to personally serve Khalilzadeh, Khalilzadeh was properly served via substitute service.  *See* Section III(A)(3)(b), *supra* (explaining why service was proper); ECF No. 11 (proof of service).  Nonetheless, Khalilzadeh has not made an

14

1   appearance nor challenged the entry of default in this case.  Based on this record, nothing before

2   the Court suggests that Khalilzadeh's failure to appear or litigate this case was the result of

3   excusable neglect.  As such, Khalilzadeh has no excusable reason to fail to appear in the instant

4   case.

5        **5.  Seventh *Eitel* Factor: Policy Favoring Decision on the Merits**

6        Although the policy favoring decision on the merits generally weighs strongly against

7   awarding default judgment, district courts regularly hold that the policy against default judgment,

8   standing alone, is not dispositive, especially where a defendant fails to appear or defend himself.

9   *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010)

10  (explaining that where defendants have failed to appear, policy of favoring decisions on the merits

11  will not block default judgment); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal.

12  Aug. 13, 2014) (same).  Khalilzadeh was properly served and has not made an appearance nor

13  challenged the entry of default.  Thus, the likelihood of the case proceeding to a resolution on the

14  merits is low.  Accordingly, the Court finds that this factor slightly weighs against default

15  judgment.

16       **6.  Balancing of *Eitel* Factors**

17       In sum, the following six *Eitel* factors weigh in favor of default judgment as to Plaintiff's

18  ADA and UCRA claims: (1) the possibility of prejudice, (2) the merits of Plaintiff's substantive

19  claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the

20  possibility of a dispute concerning material facts, and (6) excusable neglect.  *See Eitel*, 782 F.2d at

21  1471–72.  The final factor, the policy favoring decisions on the merits, weighs slightly against

22  default judgment.  The Court concludes that the last *Eitel* factor is outweighed by the other six

23  factors that favor default judgment.  *See, e.g.*, *Michael Grecco Prods., Inc.*, 2020 WL 7227199, at

24  *6 (concluding that the last *Eitel* factor, which weighed slightly against default judgment, was

25  outweighed by the first six *Eitel* factors, which weighed in favor of default judgment);

26  *DiscoverOrg*, 2020 WL 6562333, at *8 (same).  Thus, the Court concludes that default judgment

27  is appropriate.

28

United States District Court
Northern District of California

15

### C.  Damages

A plaintiff who seeks default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment order.  *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

In the instant case, Plaintiff seeks the following relief: (1) statutory damages; (2) injunctive relief; and (3) attorney's fees and costs.  The Court addresses each form of relief in turn.

#### 1.  Statutory Damages

Under the UCRA, a defendant that discriminates against a plaintiff is liable for one of two types of damages.  The Court can either award actual damages in a sum of up to three times actual damages, or statutory damages, which can be no less than $4,000 for each time the plaintiff was discriminated against by the defendant.  Cal. Civ. Code § 52(a).  In order to be awarded damages by the Court, the plaintiff must demonstrate that Plaintiff had knowledge of the barriers at issue, and that Plaintiff experienced difficulty, discomfort, or embarrassment when visiting Defendant's establishment.  Cal. Civ. Code § 55.56.

In the instant case, Plaintiff seeks statutory damages of $12,000.  Mot. at 11.  As explained above, *supra* Section III(B)(2), Plaintiff has stated a UCRA claim and has adequately alleged that Plaintiff had knowledge of the barriers at issue and experienced difficulty and discomfort as a result of the barriers during Plaintiff's visits to the Shell Gas Station.  Compl. at ¶ 20.  Accordingly, the Court grants Plaintiff's request for $12,000 in statutory damages.  *See Ridola v. Chao*, 2018 WL 2287668, at *15 (N.D. Cal. May 18, 2018) (awarding $8,000 in statutory damages after plaintiff twice visited location that was non-compliant with the ADA).

#### 2.  Injunctive Relief

Plaintiff seeks an injunction under the ADA with respect to the barriers alleged in the

16

complaint.  Mot. at 12.  Specifically, Plaintiff seeks an order requiring Khalilzadeh to provide wheelchair accessible parking spaces; a wheelchair accessible sales counter; and wheelchair accessible paths of travel inside the Shell Gas Station.  *Id.* at 13.  The Court considers Plaintiff's requested injunctive relief below.

Where a property does not comply with the requirements of Title III of the ADA, a plaintiff is entitled to an "order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities."  42 U.S.C. § 12188.  In the instant case, as explained above, Plaintiff has adequately alleged that the Shell Gas Station does not comply with the ADA because the Shell Gas Station has several architectural barriers that Plaintiff experienced on each of his visits.  Compl. at ¶¶ 12–15.

Specifically, as Plaintiff's investigator noted in the inspection and as Plaintiff alleges in the complaint and motion for default judgment, the following barriers exist: (1) parking stalls and access aisles in the Shell Gas Station parking lot that are not level with each other in violation of ADA 2010 Standard § 502.4; (2) access isles next to the wheelchair accessible parking spaces that are not marked so as to discourage parking in them in violation of ADA 2010 Standard § 502.3.3; (3) a sales counter that is higher than 36 inches in height and less than 36 inches in width in violation of ADA 2010 Standards § 904.4 and 904.4.1; and (4) paths of travel inside the Shell Gas Station that are less than 36 inches in width in violation of ADA 2010 Standard § 403.5.1.  Mot. at 9; ECF No.17-5, at ¶¶  3–5. ("Wegman Decl.").  Because the Court concludes that Plaintiff has adequately alleged that the Shell Gas Station has architectural barriers that violate the ADA, Plaintiff is entitled to an injunction to remedy these architectural barriers.  42 U.S.C. § 12188.

In sum, the Court concludes that Plaintiff is entitled to an injunction ordering Khalilzadeh to remedy the following architectural barriers: (1) parking stalls and access aisles in the Shell Gas Station parking lot that are not level with each other in violation of ADA 2010 Standard § 502.4; (2) access isles next to the wheelchair accessible parking spaces that are not marked so as to discourage parking in them in violation of ADA 2010 Standard § 502.3.3; (3) a sales counter that is higher than 36 inches in height and less than 36 inches in width in violation of ADA 2010

17

United States District Court
Northern District of California

1  Standards § 904.4 and 904.4.1; and (4) paths of travel inside the Shell Gas Station that are less

2  than 36 inches in width in violation of ADA 2010 Standard § 403.5.1.

3       **3.  Attorney's Fees and Costs**

4       The ADA permits a prevailing plaintiff to recover reasonable attorney's fees, litigation

5  expenses, and costs.  *See* 42 U.S.C. § 12205.  To calculate an award of reasonable attorney's fees,

6  courts multiply the number of hours reasonably expended on the litigation by the reasonable

7  hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In calculating the number of

8  hours reasonably expended on the litigation, the Court excludes hours that are "excessive,

9  redundant, or otherwise unnecessary."  *Id.* at 434.  In determining the hourly rate, the Court must

10  "consider[] the experience, skill and reputation of the attorney requesting fees."  *Chalmers v. Los*

11  *Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373

12  (9th Cir. 1987).

13       In the instant case, Plaintiff requests $4,640.00 in attorneys' fees and costs, including: (1)

14  $650.00 in attorney's fees for attorney Mark Potter; (2) $1,170.00 in attorney's fees for attorney

15  Russell Handy; (3) $900 in attorney's fees for attorney Amanda Seabock; (4) $1,040 in attorney's

16  fees for attorney Faythe Gutierrez; and (5) $880.00 in other litigation costs. Mot. at 13; ECF No.

17  17-3, at 8 ("Handy Decl.").  Below, the Court addresses in turn (1) Plaintiff's counsel's hourly

18  rate; (2) the number of hours expended by Plaintiff's counsel; and (3) litigation costs.

19       **a.  Plaintiff's Counsel's Hourly Rate**

20       The first step in the calculation of a lodestar figure is to determine the reasonable hourly

21  rate to be applied.  For the purposes of determining the proper hourly rate, the relevant community

22  is the forum in which the Court sits.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th

23  Cir. 2008).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in

24  the community, and rate determinations in other cases, particularly those setting a rate for the

25  plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*

26  *of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

27       When a party seeking fees submits declarations, courts must consider those declarations

28  

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1    and cannot substitute that analysis by only considering previous fee awards.  *Roberts v. City of*

2    *Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("The district court diverged from the applicable

3    standard in discarding the declarations entirely and considering only the previous fee awards in

4    determining the prevailing market rate.").

5         However, the Ninth Circuit has made clear that "[a] reasonable fee is a fee that is sufficient

6    to induce a capable attorney to undertake the representation of a meritorious civil rights case."

7    *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quotation marks omitted).

8    Thus. the purpose of granting fees in cases like the instant case is both "to attract qualified counsel

9    to civil rights cases and [to] avoid[] a windfall to counsel.  The way to do so is to compensate

10   counsel at the prevailing rate in the community for similar work; no more, no less."  *Id.* (quotation

11   marks, citations, and internal alterations omitted).

12        Here, Plaintiff seeks a rate of $650 per hour for attorneys Mark Potter and Russell Handy;

13   a rate of $500 per hour for attorney Amanda Seaback; and a rate of $400 per hour for attorney

14   Faythe Gutierrez.  Handy Decl. at ¶¶ 3–6.

15        Plaintiff has submitted the declaration of John O'Connor to justify his claimed hourly

16   rates.  ECF No. 17-10 ("O'Connor Decl.").  According to O'Connor, attorneys Mark Potter and

17   Russell Handy have between twenty-one and twenty-six years of experience.  *Id.* at ¶ 30.  Attorney

18   Amanda Seaback, who is an associate, has six years of experience.  *Id.*  The O'Connor Declaration

19   does not discuss the experience of attorney Faythe Gutierrez, who is an associate.

20        Based on the experience of the attorneys at issue in the instant case, O'Connor "opine[d]"

21   that in this district, "the most appropriate rate for partners' ADA services range from $450 to $750

22   per hour, despite recent awards as low as $400 to $425."  *Id.* at ¶ 27.  O'Connor further explained

23   that "for associates' services" in this district, the "most appropriate range" is "from $300 to $550

24   per hour, notwithstanding exceptional awards as low as $250."  *Id.*  O'Connor declared that his

25   opinion was based on "recent rates awarded in the Northern District, and disability rates in the Bay

26   Area in general," which he has "kept abreast of . . . since at least 2000."  *Id.* at ¶ 29.  As a result,

27   Plaintiff's counsel seeks rates of $650 per hour for attorneys Mark Potter and Russell Handy; $500

28

19

per hour for attorney Amanda Seabock; and $400 per hour for attorney Faythe Gutierrez.  Handy Decl.  at ¶¶ 3–6.

However, the O'Connor Declaration alone does not justify the rates that Plaintiff seeks in the instant case.  The rates that Plaintiff seeks are all on the high end of the O'Connor Declaration's claimed reasonable rates, and Plaintiff's counsel does not adequately justify these specific rates.  Moreover, in ADA cases, courts typically award analogous rates for attorneys with far more experience than Plaintiff's counsel.  *See, e.g., Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1268 (N.D. Cal. 2014) (awarding fees at $645 per hour for an attorney who was a "member of the California bar for over forty-five years" and because "defendants d[id] not contest that $645/hour [was] a reasonable rate"); *Martin v. Diva Hosp. Grp., Inc.*, 2018 WL 6710705, at *2 (N.D. Cal. Dec. 7, 2018) (awarding fees of $700 per hour for attorneys with almost thirty years of experience and awarding fees of $795 per hour for an attorney with almost fifty years of experience).  Moreover, courts in this district have noted "that a rate over $700/hour is the exception, and not the norm, for disability cases."  *Johnson v. Rocklin of Cal. LLC*, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019) (citing *Chapman v. NJ Properties, Inc.*, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019)).  Rather, "[f]or attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases."  *Id.* (collecting cases).

The Court acknowledges that Plaintiff's counsel has obtained a fee award consistent with what Plaintiff requests in the instant case in *Love v. Rivendell II, Ltd., et al.*, Case No. 18-CV-03907-JST (EDL), ECF No. 25 (N.D. Cal. Mar. 11, 2019) (report and recommendation granting hourly rate of $650 for attorneys Potter and Handy); *see id.*, ECF No. 30 (adopting report and recommendation).  However, as multiple courts in this district have explained, "that lone order granting an unopposed motion does not accurately reflect the prevailing rate in the community for work similar to this action," as "that order cited cases that concerned work substantially different from the work performed in this action."  *Johnson v. AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (N.D. Cal. May 29, 2019); *Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (same); *John v. Cala*

20

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

*Stevens Creek/Monroe*, LLC, 2020 WL 2556989, at *5 (N.D. Cal. May 20, 2020) (same).
Specifically, the case that *Rivendell* relied upon involved "a complex class action matter involving
54 hotels spread among multiple states" and set "'new precedent' that caused the California State
Bar to 'change a policy which impacts potentially hundreds of individuals each year across
California.'" *Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (distinguishing the fee award in
*Rivendell*).

By contrast, the instant case is a straightforward ADA case with a single gas station that
presents no significant legal issues of first impression.  When a case "is a relatively simple one,
involving straight-forward application of the law, and which does not present novel or difficult
issues requiring a high level of skill or specialization," courts have found that higher rates are
generally unwarranted. *See Johnson v. Oakwood Ctr. LLC*, 2019 WL 7209040, at *13 (N.D. Cal.
Dec. 27, 2019).

Moreover, as Plaintiff's own expert explained, the floor for reasonable ADA rates in this
district is $450 per hour for partners and $300 per hour for associates.  O'Connor Decl. at ¶¶ 27,
33.  Recent decisions from this district confirm that rates similar to these are reasonable.  *See, e.g.,*
*Johnson v. Chao*, 2021 WL 1430799, at *9 (N.D. Cal. Feb. 2, 2021) (granting rates of $475 to
attorneys Potter and Handy; $350 to attorney Seabock; and $300 to attorney Gutierrez); *Johnson v.*
*Baglietto*, 2020 WL 3065939, at *12 (N.D. Cal. May 21, 2020) (granting rates of $475 for
attorneys Potter and Handy, and $350 for attorney Seabock); *Cala Stevens Creek/Monroe, LLC*,
2020 WL 2556989, at *7 (granting rates of $475 for attorneys Potter and Handy, and $350 for
attorney Seabock); *Rocklin of Cal. LLC*, 2019 WL 3854308, at *12 (granting rates of $475 per
hour for attorneys Potter and Handy and $350 per hour for attorney Seabock); and *Oakwood Ctr.*
*LLC*, 2019 WL 7209040, at *13 (granting rates of $475 for attorneys Potter and Handy, and $350
for attorney Seabock).

Finally, these rates are reasonable because, as the Ninth Circuit has explained, "[a]
reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation
of a meritorious civil rights case." *Vogel*, 893 F.3d at 1158 (quotation marks omitted).  As this

21

Court previously noted, Plaintiff's counsel as of November 2019 had filed over one thousand ADA cases in this district and approximately four thousand ADA cases in the Central District and Eastern District of California, and there is no evidence that rates of approximately $475 per hour for partners and approximately $300 to $350 per hour for associates are insufficient to induce capable attorneys to undertake ADA litigation in this district.  *See Cala Stevens/Monroe, LLC*, 2020 WL 2556989, at *6 (explaining Plaintiff's counsel's volume of ADA cases in this circuit); *Johnson v. Maple Tree Investors et al.*, No. 17-cv-06762-LHK, ECF No. 62 at 17, 34-36 (N.D. Cal. Dec. 4, 2019) (transcript of November 7, 2019 hearing at which attorney from Plaintiff's counsel's firm represented that his law firm has simultaneously "over a thousand" ADA cases in this district and approximately 1,500 ADA cases in the Central District of California and had litigated approximately 2,500 ADA cases in the Eastern District of California).  Moreover, the Ninth Circuit has noted that "district court[s] must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel."  *Vogel*, 893 F.3d at 1158 (quotation marks, citations, and internal alterations omitted).  The Court therefore finds that awarding the fees requested by Plaintiff's counsel in this case would result in a prohibited windfall to Plaintiff's counsel.  *See id.*

Accordingly, in light of Plaintiff's declaration and evidence, case law from this district concerning reasonable attorney's fees, and binding Ninth Circuit precedent, the Court determines that the following hourly rates are reasonable for the instant case: $475 per hour for attorneys Mark Potter and Russell Handy; $350 per hour for attorney Amanda Seaback; and $300 per hour for attorney Faythe Gutierrez.

**b.  Plaintiff's Number of Hours**

Plaintiff requests a total of 7.2 hours for work on the instant case.  Handy Decl. at 9.  These hours include 1.00 hour for attorney Mark Potter (case assessment, instructions to investigator, analysis of claims, review of images); 1.8 hours for attorney Russell Handy (review of investigator report, public records search, instructions for complaint drafting); 1.8 hours for attorney Amanda Seaback (drafting of complaint and drafting request for entry of default); and 2.8 hours for

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

1    attorney Faythe Gutierrez (drafting motion for default judgment and finalizing declarations for

2    investigator and plaintiff).  *Id.* at 8–9.  Having reviewed Plaintiff's counsel's declaration and

3    supporting documentation, the Court concludes that these hours were expended reasonably.

4         Accordingly, the Court calculates Plaintiff's counsel's lodestar as follows.  1.00 hour for

5    Mark Potter at $475 per hours for a total of $475.00.  1.8 hours for Russell Handy at $475 per hour

6    for a total of $855.00.  1.8 hours for Amanda Seabock at $350 per hour for a total of $630.00.

7    Finally, 2.8 hours for Faythe Gutierrez at $300 per hour for a total of $840.00.  In sum, the Court

8    concludes that Plaintiff is entitled to $2,800.00 in attorneys' fees in the instant case.

9         **c.  Litigation Costs**

10        Finally, Plaintiff requests $880.00 in other litigation costs.  Plaintiff has submitted

11   documentation showing that he expended a total of $880.00 in litigation costs in the instant case,

12   including a $400.00 filing fee, $80 on service of documents, and $400.00 on investigative costs.

13   ECF No. 17-3, at 7.  The Court concludes that these litigation costs are reasonable with the

14   exception of the $80 request for service of documents.  *See Rodriguez v. Barrita, Inc.*, 53 F. Supp.

15   3d 1268, 1295 (N.D. Cal. 2014) (awarding costs for an investigator to perform site surveillance in

16   an ADA case); *Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *10 (N.D. Cal. 2013) (awarding

17   costs for filing and service of process fees).  The Court awards only $40 for service of documents

18   because this service charge includes both Khalilzadeh and 12 N Park Victoria LLC, and the Court

19   has denied Plaintiff's motion for default judgment with respect to 12 N Park Victoria LLC.

20   Accordingly, the Court awards only $40 for service of documents.  As such, the Court grants

21   Plaintiff $840.00 in litigation costs.

22        Thus, the Court grants in part and denies in part Plaintiff's request for attorneys' fees and

23   costs.  In total, the Court grants Plaintiff $2,800 in attorneys' fees and $840.00 in other litigation

24   costs for a total award of $3,640.00 in attorneys' fees and costs.

25   **IV.   CONCLUSION**

26        For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment

27   against Khalilzadeh on Plaintiff's claims for violation of the ADA and UCRA.  The Court awards

28
                                                    23

United States District Court
Northern District of California

1  Plaintiff $12,000 in statutory damages and $3,640.00 in attorneys' fees and costs.  The Court

2  enters an injunction ordering Khalilzadeh to remedy the following violations of the ADA at the

3  Shell Gas Station in Milpitas, California: (1) parking stalls and access aisles in the Shell Gas

4  Station parking lot that are not level with each other in violation of ADA 2010 Standard § 502.4;

5  (2) access isles next to wheelchair accessible parking spaces that are not marked so as to

6  discourage parking in them in violation of ADA 2010 Standard § 502.3.3; (3) a sales counter in

7  the Shell Gas Station that is higher than 36 inches in height and less than 36 inches in width in

8  violation of ADA 2010 Standards § 904.4 and 904.4.1; and (4) paths of travel inside the Shell Gas

9  Station that are less than 36 inches in width in violation of ADA 2010 Standard § 403.5.1.

10  Finally, the Court DENIES Plaintiff's motion for default judgment as to 12 N Park

11  Victoria LLC with leave to amend.  Within 7 days of this Order, Plaintiff shall file proof that the

12  purported May 25, 2020 service complied with the requirements of California Code of Civil

13  Procedure Sections 415.20(a), 417.10(a), and 412.30.  If service of process on 12 N Park Victoria

14  LLC was proper, Plaintiff shall file a renewed motion for default judgment by September 1, 2021.

15  If, however, service of process on 12 N Park Victoria LLC was not proper, then the Court will

16  order the Clerk of the Court to vacate the entry of default against 12 N Park Victoria LLC.

17  Plaintiff must then properly serve 12 N Park Victoria LLC.

18  **IT IS SO ORDERED.**

19  Dated: August 2, 2021

20  *Lucy H. Koh*

21  LUCY H. KOH
United States District Judge

Case No. 20-CV-02200-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California